UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| In re: ) | Bankr. No. 13-10123 |
| ) | Chapter 7 |
| DEIDRA ANNETTE ZUBKE ) | |
| dba D's Closet ) | |
| SSN/ITIN xxx-xx-5279 ) | |
| Tax ID/EIN 27-4409347 ) | |
| ) | DECISION RE:  UNITED STATES |
| and ) | TRUSTEE'S MOTION TO DISMISS |
| ) | CASE FOR ABUSE UNDER § 707(b)(3) |
| JOE LYNN ZUBKE ) | |
| SSN/ITIN xxx-xx-9500 ) | |
| ) | |
| Debtors. ) | |

The matter before the Court is the United States Trustee's Motion to Dismiss for Abuse Pursuant to 11 U.S.C. § 707(b)(3). This is a core proceeding under 28 U.S.C. § 157(b)(2). The Court enters these findings and conclusions pursuant to Fed.Rs.Bankr.P. 7052 and 9014(c). For the reasons discussed below, the Court will grant the motion but will, in lieu of dismissal, convert the case to chapter 13, as Debtors requested earlier.

I.

Deidra Annette Zubke borrowed money from CorTrust Bank to purchase a prefabricated "Governor's House,"[1] construct a basement, construct an addition and garage, purchase carpet and appliances for the upper level, and finish the lower level to accommodate a rental unit and a beauty salon. Her father co-signed the loan. The loan was denominated a residential real estate loan. Deidra Zubke, her family, Joe Lynn Zubke, who was Deidra's fiancé at the time, and his family did much of the work

---

[1] Through a program sponsored by the State of South Dakota, an income-eligible resident is able to purchase a low-cost home that is constructed by prison inmates, moved to a lot owned by the resident, and placed on a basement or foundation prepared by the resident.

themselves over time, hiring professionals for only a few projects.

The rental unit and salon in the lower level had an entrance separate from the living quarters in the upper level. The rental unit was finished and occupied by a renter about five months after the upper level was occupied as a home. For the first five or six years after the house was completed, Deidra Zubke also operated a beauty salon there. She later converted the salon to a bedroom and included it as part of the rental unit.

Deidra Zubke's initial loan with CorTrust Bank was a construction loan that was converted to a traditional home loan and mortgage. CorTrust Bank subsequently transferred its loan and mortgage to a Chase banking entity. Eventually, Deidra Zubke and Joe Zubke married. When interest rates dropped, Deidra Zubke and Joe Zubke refinanced the home loan with Wells Fargo Bank, N.A.,[2] taking Deidra's father off as a cosigner, adding Joe Zubke as a co-debtor, and increasing the debt load.

The rental unit has been continuously rented. Deidra Zubke does not specifically apply the rental income to the mortgage debt; instead, she deposits the rental income in her general checking account and uses it to pay various expenses. The utilities for the rental unit are not separate; Deidra Zubke pays all utility bills.

Deidra Zubke operated a used clothing store from September 2010 until the end of May 2013. This business was located outside the home.

Joe Zubke and Deidra Zubke ("Debtors") filed a chapter 7 petition in bankruptcy (doc. 1, pp. 1-3). They scheduled the value of the house at $180,000.00 and stated the mortgage debt on it was $174,892.32 (doc. 1, p. 10). They claimed the house exempt as their homestead (doc. 1, p. 14). On their petition and on their Statistical

---

[2] Debtors' schedules indicate their home mortgage creditor is Wells Fargo Home Mortgage (doc. 1, p. 16). A motion for relief from the automatic stay and attached mortgage indicate the mortgage holder is Wells Fargo Bank, N.A. (doc. 46).

Summary of Certain Liabilities and Related Data (doc. 1, p. 9), Debtors indicated their debts were not primarily consumer debts. They scheduled secured claims against them totaling $222,695.32; they did not identify any of these secured claims as business related (doc. 1, p. 16). According to their schedule of unsecured, nonpriority claims (doc. 1, pp. 18-25) and one amendment thereto (doc. 12), unsecured claims against them total $70,273.00; they identified a total of $44,247.50 as business related. According to their schedules I and J, Debtors' monthly income is $4,816.16, their monthly expenses are $3,651.05, and they have disposable income of $1,165.11 per month (doc. 1, pp. 28-29).

The United States Trustee moved to dismiss Debtors' chapter 7 case under 11 U.S.C. § 707(b)(3) for abuse (doc. 17). He argues the liabilities against Debtors are primarily consumer debts, not business debts, and because Debtors have monthly disposable income of $1,165.11, their chapter 7 case constitutes an abuse warranting dismissal under the totality of the circumstances provisions of § 707(b)(3). The United States Trustee challenges, as unsupported by any authority, Debtors' assessment that 64.25% of their mortgage debt should be considered a business debt because the monthly rent of $850.00 for the rental unit covers that percentage of their total monthly mortgage payment of $1,323.05.[3] The United States Trustee instead argues the nature of the debt has to be determined at the time the debt was incurred, and he argues Debtors incurred their mortgage debt principally to acquire a home.

Debtors filed an objection to the United States Trustee's dismissal motion (doc.

---

[3] While it was not entirely clear, it appears Debtors may have made the 64.25% argument, or something akin to it, at their meeting of creditors or during informal discovery, and then the United States Trustee relayed that argument in his motion to dismiss. In their objection to the motion, Debtors dispute the United States Trustee's description of their argument.

23). Therein, Debtors state it was always their "intent to commercialize part of the property to pay, or help pay the cost of their new home." They urge the Court to adopt a "profit motive test" from the Fifth and Sixth Circuits in assessing whether their debts are primarily consumer or business. In their response, Debtors argue 62% of their unsecured debt is business debt because it arose from the failure of Deidra Zubke's used clothing store. Debtors also want the Court to consider half of their mortgage expense as a business debt since the rental unit comprises half their house. Debtors want the Court to add this half of their mortgage expense to the secured debts of CorTrust Bank and Dakotaland Credit Union and $43,898.00 of their unsecured debt. When totaled, Debtors argue they have $165,885.00 in business debt, which they calculate is 56.7% of their total debt. As an alternative theory, Debtors propose that because Deidra Zubke originally built the house with a profit motive, the entire mortgage debt should be considered business debt.

An evidentiary hearing was held March 12, 2014. The only issue presented by the parties was whether the claims against Debtors are primarily consumer; Debtors have not disputed their disposable income would allow them to fund a chapter 13 plan. *See United States Trustee v. Harris*, 960 F.2d 74, 76 (8th Cir. 1992) (under the totality of the circumstances, the ability to pay alone constitutes abuse); *In re Thomas Wayne McNary*, Bankr. No. 08-50120, 2008 WL 2845634, at *2 (Bankr. D.S.D. July 18, 2008) (discussing *Harris* post-BAPCPA).

The parties stipulated the home loan was denominated a residential loan, not a commercial loan. During the hearing, the United States Trustee also referred to the note and the mortgage attached to a relief from stay motion filed by Wells Fargo Bank,

N.A.[4] There were two witnesses. Deidra Zubke testified the original construction loan was for $110,000.00 or $120,000.00. She said the Governor's House cost $28,000.00, and she spent $15,000.00 finishing the upper level. She clearly testified she bought the house to have a home, not for another primary purpose. Deidra Zubke also testified she and Joe Zubke borrowed an additional $50,000.00 or $60,000.00 when they refinanced the debt. Regarding these additional funds borrowed, Deidra Zubke stated, "I think we just paid off some bills[; it] wasn't to open any of the stores or anything like that, because that was further down the road." She admitted nothing more was done with the house using the additional funds they borrowed. She also acknowledged the mortgage with Wells Fargo Bank, N.A. required Debtors to occupy the house as their principal residence for at least one year.

In contrast to Deidra Zubke's testimony, at the hearing Joe Zubke testified the original construction loan was for about $130,000.00 or $140,000.00. He further stated that when they refinanced the debt, they borrowed or refinanced an additional $30,000.00 for Deidra Zubke's used clothing business and the combined debt was then secured by the new home mortgage.

II.

The Court may dismiss a chapter 7 case under 11 U.S.C. § 707(b)(3)(B) if the claims against the debtor are primarily consumer debt and, under the totality of the circumstances, granting the debtor relief under chapter 7 would be an abuse of the

---

[4] While the United States Trustee's dismissal motion was pending, Wells Fargo Bank, N.A. filed a motion for relief from the automatic stay (doc. 46). In the motion, Wells Fargo Bank, N.A. alleged Debtors originally borrowed $182,507.00 and still owed $178,027.06 as of February 1, 2014. Wells Fargo Bank, N.A. also stated in its motion that Debtors' mortgage payments were in arrears. Attached to the motion were the mortgage and note, both dated January 5, 2011. Debtors did not contest the motion, and it was granted (doc. 48). Debtor Deidra Zubke testified Debtors had cured the arrearage.

bankruptcy process. *Lapke v. Mutual of Omaha Bank* (*In re Lapke*), 428 B.R. 839, 842 (B.A.P. 8th Cir. 2010). "The fundamental purpose of dismissal under section 707(b)(3) is to prevent individuals that have an ability to repay a portion of their obligations to avoid payment by virtue of a chapter 7 discharge." *In re Chay Linette Williams*, Bankr. No. 10-03620-als7, 2011 WL 10468090, at *6 (Bankr. S.D. Iowa July 14, 2011).

To determine whether the claims against a debtor are primarily consumer, the Court assesses whether the debt was incurred primarily for a personal, family, or household purpose. 11 U.S.C. § 101(8); *Lapke*, 428 B.R. at 843. A home mortgage is generally consumer debt. *Lapke*, 428 B.R. at 843 (citing *Cox v. Fokkena* (*In re Cox*), 315 B.R. 850, 855 (B.A.P. 8th Cir. 2004), and *Zolg v. Kelly* (*In re Kelly*), 841 F.2d 908, 913 (9th Cir. 1988)).

The United States Trustee, as the movant, bears the burden of proof, by a preponderance of the evidence, when seeking dismissal under § 707(b)(3). *In re Weixel*, 494 B.R. 895, 901 (B.A.P. 6th Cir. 2013); *Moutousis v. United States Trustee* (*In re Moutousis*), 418 B.R. 703, 710 (E.D. Mich. 2009); *In re Reeves*, 327 B.R. 436, 440 (Bankr. W.D. Mo. 2005). Once the movant makes a *prima facie* case, the burden shifts to the debtor to go forward to controvert the *prima facie* case. *In re Wise*, 453 B.R. 220, 226 (Bankr. D. Vt. 2011); *In re Perelman*, 419 B.R. 168, 177-78 (Bankr. E.D.N.Y. 2009).

III.

As noted above, Debtors scheduled four secured claims against them totaling $222,695.32. In their schedules, Debtors described the four secured claims as Wells Fargo Home Mortgage for $174,892.32, with their house as collateral; Sioux Valley Credit Union for $13,262.00, with a repossessed vehicle as collateral; Dakotaland

Credit Union for $12,347.00, with a homemade trailer, two older pickups, a 1997 Arctic Cat snowmobile, all repossessed, as collateral; and CorTrust Bank, N.A. for $22,194.00, with a 2010 Polaris snowmobile and a 2008 Cadillac DTS as collateral. Debtors further described, in their schedules, the three non mortgage secured claims as "Purchase Money Security" debts. As also noted above, Debtors did not describe in their schedules any of the four secured claims as business related.

According to Debtors' schedules and amended schedule, the unsecured claims against them total $70,273.00. Of this total, Debtors denominated $44,247.50 as business debts. When the secured and unsecured claims are considered together, the total debt is $292,968.32. Of that total debt, Debtors denominated $44,247.50, or 15%, as business debt. Thus, according to Debtors' schedules, the vast majority of their debt is consumer, not business.

The only material fact presented at the evidentiary hearing was the parties' stipulation that the home loan–both when the debt was originally incurred and again when it was refinanced–was considered a residential loan, not a commercial loan. This stipulation was consistent with Debtors' schedules, and no other testimony or exhibit offered at the evidentiary hearing altered what Debtors had declared in their schedules about any other claim, secured or unsecured. Moreover, with that stipulation, the United States Trustee made a *prima facie* showing that the claims against Debtors were primarily consumer because the home mortgage was 60% of their total debt. The burden thus shifted to Debtors to go forward and establish they had more business debt than consumer debt. This Debtors failed to do.

Debtors did not produce reliable evidence demonstrating how the original home loan funds or the refinanced loan funds were actually expended. Their testimony on this issue was nonlinear, incomplete, and discrepant, and they offered no supporting

documentation.  Though Debtors had argued in their response to the dismissal motion that the secured claims held by CorTrust Bank and Dakotaland Credit Union should be characterized as business related, Debtors did not produce any testimony or documentary evidence to support this argument.  Thus, the Court was left with the schedules, which listed as collateral for the three non mortgage secured claims only personal property not readily identifiable as business-related and which described each claim as a "Purchase Money Security."

Finally, Debtors' only arguments in their pre-trial brief and at the evidentiary hearing were that half their mortgage debt should be considered business debt because they rented out half their house and because they paid taxes on that rental income.  Even if the Court were to accept that argument as legally sound, which it does not, Debtors' self-declared business debts–one half their mortgage and $44,247.50 of their unsecured debt, as identified in their schedules–would still be less than half their total debt.

There is simply no record for the Court to reach any conclusion other than that the majority of claims against Debtors are consumer in nature.  Thus, the United States Trustee's motion will be granted, and this case will, as requested earlier by Debtors, be converted to chapter 13.  An appropriate order will be entered.

Dated: April 15, 2014.

BY THE COURT:

Charles L. Nail, Jr.
Bankruptcy Judge

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota